JUDGE ROBERTSON
delivered the opinion oe the court:
The appellant, Edward Crutchfield, domiciled in the city of Louisville, Kentucky, in a brick tenement owned by him on First street, between Chestnut and Gray streets, left Kentucky in September, 1861, engaged in the cause of the Southern Confederacy, and did not return home until some time in the year 1865. During his absence some of his creditors, proceeding by attachment, obtained, in the city court of chancery, a decretal order for the sale of the house and lot, which, in execution of that judicial mandate, the marshal sold at auction to the appellee, B. S. Thurman, as the highest bidder, at a fraction under seven thousand dollars, and after-wards conveyed to him the legal title. Shortly after-wards the appellee took possession, which he has ever since retained by his own actual occupancy; and being partially dilapidated, he expended about two thousand two hundred dollars in repairs and other improvements.
On the 29th of October, 1866, the appellant filed a petition in equity in the same court for reinstating his right and possession, on the charge that the appellee, fraudulently intending to purchase the property for less than its value, artfully proclaimed to the by-standers at the sale that he was bidding for the benefit of the appellant, and would, if he should buy, hold the property for his ultimate use, and, on his return, would *500 restore It to him on being reimbursed the cost of his purchase, whereby he prevented competition and bought the property too low.
The appellee’s answer positively and explicitly denied these allegations; and the only testimony in support of them is that of William K. Thomas, who testified that, as a friend of the appellant, he attended the sale for the purpose of buying the property for the appellant’s benefit, and to that end intended to bid for it, but did not bid because the appellee, on being informed of his object, told him that he was bidding for the same purpose; and would, if he should boy, hold on the same condition to the appellant’s use.
The petition neither alleged a tender nor made an offer of reimbursement; and the chancellor, on the hearing, dismissed the petition.
Although there is some contrariety in the evidence as to the vendible value of the property when sold, yet there is a decided preponderance, in number and in intrinsic force, in favor of the conclusion that, considering the condition of the property, the stagnation and depression resulting from the pendency of the civil war, and the encumbrance of the contingent right of the appellant’s wife to potential dower, and which has become consummate by his death during the pendency of this appeal, the sale was for a fair and full pi’ice.
On these facts we find it difficult to reverse the chancellor’s decree.
If the appellant was wronged, and might, if true to the Union, have a just claim to be righted by this court, his hostile attitude would not affect his right to enforce an implied trust resulting, not from contract, but from fraud.
But the solitary testimony of one witness, however credible, is not of such a definite and unquestionable *501 character as to establish the alleged fraud and resulting trust against the positive denial of the answer. From that isolated and rather indeterminate evidence we cannot, with judicial confidence, infer that Thomas, without any communication by the appellee, would have bought the property for the appellant, or would have bid for it more than the appellee bid; and certainly there is no satisfactory proof that any essential damage has resulted to the'appellant from the sale as made, or from the appellee’s persistent retention of the property as his own, without regard to his alleged assurances to Thomas, which, being made confidentially to him alone, could not be presumed to affect the attendant crowd, none of whom would overbid the appellee, because, as we must infer, no one was willing to give more than he offered.
On such pleadings and evidence concerning a trust so indefinite and questionable, it seems to us, on full and careful reconsideration, that we ought not, in the exercise of a sound and provident discretion as a court of the last resort, to reverse the decree of an enlightened chancellor; and this conclusion is fortified by the important consideration that a complaining party, invoking such an equity, has failed to offer to do equity by reimbursing the other party, and which perhaps might require the experiment of another sale; and by the fact also that, after all that the appellee has expended in the purchase and on the improvements, the appellant’s widow may be now entitled to dower.
Wherefore, the judgment is affirmed.